UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| RANDI L. SMITH, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 12 C 8630 |
| | ) | |
| APTARGROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Now before the Court is Plaintiff Randi L. Smith's ("Smith") motions to alter or amend the Court's dismissal of her complaint and for leave to file an amended complaint. For the following reasons, the motions are granted.

## BACKGROUND

On October 29, 2012, Smith filed a three-count complaint against her employer Aptar Group, Inc. ("Aptar"). She alleged that Aptar discriminated against her based on her gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1); interfered with the exercise of her rights under the Family Medical Leave Act of 1993 ("FMLA"), 28 U.S.C. § 2601 *et seq.*; and retaliated against her for exercising her FMLA rights. Aptar moved to dismiss the entire complaint. On February 21, 2013, we granted Aptar's motion as to all counts. We held that Smith's

Title VII claim was time-barred absent allegations suggesting ongoing sexual harassment that fell within the 300-day statute of limitations period under 42 U.S.C. § 2000e-5(e)(1). *See Smith v. Aptar Group, Inc.*, 12 C 8630, 2013 U.S. Dist. LEXIS 23889, at *6-8 (N.D. Ill. Feb. 21, 2013). We also found that the complaint failed to allege facts sufficient to plead an FMLA interference claim, and that Smith's FMLA retaliation claim was not cognizable as pled. *See id.* at *8-11. We entered judgment on the dismissal the same day.

On March 4, 2013, Smith filed a motion to alter or amend judgment accompanied by a supporting memorandum and proposed first amended complaint ("amended complaint"). Aptar filed a responsive brief on March 12th, arguing that we should deny Smith's motion because: (1) the Court's dismissal of the complaint was a final judgment which negated our jurisdiction over the matter; (2) Smith does not meet the threshold requirements to file an amended complaint under Federal Rules of Civil Procedure 59(e) and 60(b); (3) the amended complaint presents new theories of recovery; and (4) the amended complaint fails to state a cognizable claim and is therefore futile. On March 13th we ruled in open court and via minute order that dismissal of the complaint was not a final order and vacated the judgment. This effectively mooted Aptar's first two arguments against granting Smith's motion. We now state the allegations in the amended complaint in order to assess whether Smith states viable claims. We are obligated to assume the truth of those allegations for present purposes.

*Amended Complaint*

Smith began her employment with Aptar in May 2008. At all times relevant to the lawsuit, she worked at Aptar's Libertyville, Illinois manufacturing facility as a Training Coordinator.

Beginning in February 2011, Smith took several days of FMLA leave in order to recover from various conditions, including a kidney stone procedure and chronic migraines. Smith timely submitted her FMLA requests and supporting documentation to John Perez ("Perez"), Aptar's Human Resources Manager and Smith's direct supervisor. On September 9, 2011, Perez met with Smith and told her that she was close to exhausting her FMLA leave for the year. He presented her with a spreadsheet listing days on which she had allegedly taken FMLA leave. Smith alleges that Perez's accounting of her FMLA leave days was inaccurate. For example, the spreadsheet indicated that Smith had used FMLA leave on weekends despite her never having been scheduled to work on weekends. Smith informed Perez that his calculations were mistaken, to which Perez responded "fine, I just wanted you to know where you stand." Perez then issued Smith a write up for poor attendance, which Smith did not sign. The write up advised Smith that she would be terminated should her attendance continue to be a problem.

Beginning the next day, Perez ceased communicating with Smith verbally, resorting exclusively to emails or conveying messages via an intern. Smith perceived this change as retaliation, and alleges that her work suffered and that she was ostracized from her colleagues as a result. On September 14th, Smith told Perez that she would complain to Mary Krager ("Krager"), Aptar's Director of Human Resources, about the incorrect calculation of her FMLA leave time, her write up, and Perez's behavior. On September 15th, Smith emailed Krager.

On September 16th, Perez began removing Smith from certain job-related duties, including a training project. On September 29th, Smith met with Perez and Aptar's Office Manager Barb Bardzinski ("Bardzinski") to discuss her FMLA status. Smith's and Bardzinski's independent computations were nearly identical, while Perez's calculation exceeded Smith's by 106.5 hours. Bardzinski found that Smith's attendance was good enough to earn her a perfect 12 out of 12 attendance points, while Perez found that Smith had earned 5 out of 12 points. After the meeting, Perez made a remark to his intern that "even if he gets fired, he always wins."

Smith alleges that from this point on Perez undertook a pattern and practice of retaliation against her. For example, on October 3rd, Perez changed Smith's shift and told her that she could not make any subsequent schedule adjustments. He also informed Smith that she would no longer be paid for time taken for lunch. Smith

became the only employee who could not make schedule adjustments and was not paid for time spent on lunch. On October 17th, Perez deleted Smith's time clock entries, the result being that her time card reflected two fewer hours worked. On October 25th, Perez excluded Smith from a training meeting. The same day, Perez met with Smith and Carrie Fohr ("Fohr"), Aptar's Quality Manager. Perez informed Smith that he and Fohr would be restructuring Smith's job-related duties.

On October 26th, Perez called Smith into his office and informed her that he would not approve her request for FMLA leave time. Smith requested the time in order to treat a ruptured ovarian cyst. Perez questioned the authenticity of Smith's physician's signature. He then compelled Smith to sign a form permitting him to communicate directly with her physician. At approximately 4:30 p.m. the same day, Perez sent a text message to Smith informing her that her shift was again changing beginning the next day. The changed schedule decreased Smith's billable time to 7 1/2 hours per day. Smith complained to Krager.

On November 14th, Krager met with Smith and encouraged her to work things out with Perez. The next day, Perez excluded Smith from participating in the development and planning of changes to training procedures. Smith informed Krager of this via email. On November 16th, Smith was excluded from a warehouse training meeting.

On December 19th, at Perez's direction, Bardzinski cancelled an Office Manager training session scheduled with Smith. Bardzinski relayed to Smith that Perez wished to use a temporary employee instead of Smith, should a need for a substitute Office Manager arise.

Smith was questioned by Aptar management about individual FMLA absences on December 19th, December 20th, and February 7, 2013. Despite having requested the days off under the company's FMLA procedures, Perez reported that Smith was a "no call/no show" for each day.

On February 13, 2012, Perez told Smith that he wished to review her FMLA hour usage. Smith agreed and brought a spreadsheet documenting the relevant information. Perez's calculations differed from Smith's by at least 24 hours. Perez and Smith had a follow-up meeting the next day, during which Perez stated to Smith that he would "take [her] word on the hours."

On March 7th, Smith received her two-year review. She received her lowest score since becoming an Aptar employee. Smith believes that her poor review was in retaliation for asserting her rights under the FMLA. She also believes that the salary raise she received was lower than raises received by similarly situated employees, and that she received her review later than those employees.

On April 18th, Smith received a letter from Perez stating that Smith exhausted her FMLA leave days on April 3rd, that she had been losing attendance points since that day, and that her employment was being terminated ("April 18th letter"). On April 30th, Smith received an email from Perez titled "Urgent." The message stated that Smith had not been in contact with Perez to discuss her ability or willingness to work. At the time she received the email, Smith was under the impression that her employment had been terminated. Smith did contact Perez sometime thereafter. On May 11th, Smith received an email from Perez titled "FMLA Leave of Absence." Perez stated in the message that he had reviewed Smith's FMLA usage and discovered that she had enough FMLA leave time to last until May 18th. The letter also advised Smith that she had a perfect 12 point attendance record.

Sometime after returning to work, on May 31st, Smith was told by a fellow office employee that while she was on FMLA leave, Perez would count down Smith's remaining FMLA leave days until he could terminate her. Perez would do so openly in front of other office employees.

On June 1st, Perez presented Smith with a letter containing an incorrect accounting of her FMLA hours used and incorrect attendance points. Perez told Smith that he was "deducting 3 points for using FMLA." Smith's attendance points were amended after she discussed the issue with Krager via email, but the point total was still

incorrect. Then on June 26th, Smith received a letter from Perez stating that she had exhausted her FMLA leave on May 18th and that she had 9 attendance points. Smith did not agree with either assessment.

Smith alleges that from June through August she was subject to further instances of retaliation, including not receiving a correct calculation of her FMLA and attendance records from Aptar, being underpaid on two occasions, and having her work schedule altered. Smith also requested intermittent FMLA leave time on December 18, 2012 for her migraine condition. Perez did not approve the request until February 21, 2013.

On February 27, 2013, Smith received her 3-year review, which was originally due by January 1, 2013. Perez incorrectly stated that the review was to take place by January 30, 2013. Smith believes that she received her review later than other similarly situated employees. Smith was denied the opportunity to do a "self assessment" before her review.

Smith asserts two counts in the amended complaint. She alleges that Aptar interfered with the exercise of her FMLA rights, and that Aptar retaliated against her for exercising her FMLA rights.

**LEGAL STANDARD**

A plaintiff may amend a complaint pursuant to Rule 15(a) after a judgment has been vacated. *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 790 (7th Cir. 2004).

A plaintiff retains the right to amend her complaint if she does so within 21 days after serving the original pleading, or within 21 days of receiving service of a responsive pleading or a motion brought under Rule 12(b), (e) or (f). Fed. R. Civ. P. 15(a). In all other circumstances, the plaintiff must obtain the opposing party's written consent or the court's leave in order to amend the pleading. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962). A court should not permit an amended complaint that changes the theory of the case absent "some showing of lack of knowledge, mistake or inadvertence or some change of conditions over which that party had no knowledge or control." *Johnson v. Sales Consultants, Inc.*, 61 F.R.D. 369, 371 (N.D. Ill. 1973). Furthermore, a court may deny leave "for undue delay, bad faith, dilatory motive, prejudice, or futility." *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997) (citing *Foman*, 371 U.S. at 182). An amended complaint is futile if it fails to state a claim upon which relief may be granted. *GE Capital*, 128 F.3d at 1085. A court assesses whether an amended complaint is futile under the same standard as when ruling on a motion to dismiss under Rule 12(b)(6). *Id.*

The Court accepts all well pled facts as true and draws all permissible inferences in the plaintiff's favor when assessing a motion to dismiss. *Agnew v. NCAA*, 683 F.3d

328, 334 (7th Cir. 2012). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). The allegations in a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations; she must only provide enough factual support to raise her right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, a claim must be facially plausible, a requirement that is satisfied if the pleadings "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## DISCUSSION

Aptar first contends that the amended complaint presents new theories of recovery not asserted in the original complaint. Aptar's argument relies on the reasoning in *Johnson*, but that case is distinguishable from the case at bar. In *Johnson*, the district court denied the plaintiff leave to file an amended complaint where "[t]he plaintiff in the proposed amended complaint has substantially changed the theory of the instant action from fraud in the inducement to an anti-trust action." 61 F.R.D. at 371. Here, Smith presented FMLA claims in both of her complaints, albeit under the incorrect statute for the retaliation claim in the original complaint. Hence the concern

that Aptar would have to defend against new theories of recovery, as was the case in *Johnson*, is simply not present here. Smith alleged FMLA claims in the original complaint, and alleges FMLA claims in the amended complaint. *Johnson* is therefore inapposite.

Aptar also asserts that it is prejudiced because the amended complaint contains significantly more allegations than the original complaint. That the amended complaint contains more definite allegations is unsurprising, since we dismissed the original complaint in part for its lack of specificity. Rather than prejudice Aptar, the amended complaint's numerous allegations cure the deficiencies present in the original complaint and promote the underlying principles of the federal notice-pleading standard. *See Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011) ("[A] complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief, which is sufficient to provide the defendant with fair notice of the claim and its basis.") (citations and quotations omitted). We are therefore not persuaded that Aptar is unduly harmed by defending against the amended complaint.

Next, Aptar contends that we should deny Smith's motion because she fails to plead FMLA interference or retaliation claims. Eligible employees may take up to twelve work weeks of FMLA leave over the course of a twelve-month period. 29 U.S.C. § 2612(a), (b). The FMLA guarantees an eligible employee's right to

reinstatement upon her return from leave. 29 U.S.C. § 2614(a). The right to reinstatement is not absolute. 29 U.S.C. § 2614(a)(3)(B); *Kohls v. Beverly Enters. Wis., Inc.*, 259 F.3d 799, 804 (7th Cir. 2001).

Under the FMLA, an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" rights secured under the statute. 29 U.S.C. § 2615(a)(1). A plaintiff must show that her employer denied her an FMLA entitlement to succeed on an interference claim. *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). To plead an interference claim, a plaintiff must show that (1) she was eligible for FMLA protection; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she gave her employer sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled. *Goelzer v. Sheboygan Cnty., Wis.*, 604 F.3d 987, 993 (7th Cir. 2010).

Aptar contends that Smith fails to allege that Aptar denied FMLA benefits to which she was entitled. However, Smith alleges in the amended complaint that because she exercised her FMLA rights, Aptar wrote Smith up, did not pay her for time spent on her lunch breaks, revoked Smith's ability to alter her schedule, scheduled Smith to shorter shifts, and excluded Smith from training projects that she ordinarily would have been involved in. Moreover, Smith's paychecks were short on at least two occasions, Perez deleted her time clock entries so that Smith would be paid for two fewer hours

and on three other occasions, Perez counted FMLA leave days as "no call/no show" absences. Smith also alleges that Perez told her that he was deducting attendance points for taking FMLA leave. Finally, Smith alleges that she was terminated upon receiving the April 18th letter due to one of several of Perez's alleged miscalculations of her available FMLA leave time. Although it appears she was rehired, the amended complaint permits for the reasonable inference that her apparently recanted termination caused her to miss work. Accepting these allegations in a light most favorable to Smith, we find that she has sufficiently pled an FMLA interference claim.

We also find that Smith sufficiently pleads a retaliation claim under the FMLA. An employer may not "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a)(2). While retaliation and interference claims under the FMLA share some similarities, "[t]he difference between a retaliation and interference theory is that the first requires proof of discriminatory or retaliatory intent while an interference theory requires only proof that the employer denied the employee of . . . her entitlements under the Act." *Shaffer*, 662 F.3d at 443 (citation, internal quotations and brackets omitted). A plaintiff may establish a claim for FMLA retaliation under either the direct or indirect methods of proof. *Buie v. Quad Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). To establish FMLA retaliation under the direct method, a plaintiff must allege (1) a

statutorily protected activity; (2) a materially adverse action by the employer; and (3) a causal connection between the two. *Caskey v. Colgate-Palmolive Co.* 535 F.3d 585, 593 (7th Cir. 2008).

Aptar contends that Smith has failed to sufficiently plead a connection between her requests for FMLA leave and an adverse action. However, we find that Perez's alleged statements – specifically, his alleged statement that "even if he gets fired, he always wins," and his openly counting down the FMLA days that Smith had left until he could terminate her – establish the causal connection between Smith exercising her FMLA rights and the several materially adverse employment actions against her. We therefore find that Smith has sufficiently pled a retaliation claim under the FMLA.

## CONCLUSION

For the foregoing reasons, Smith's motion to alter or amend the dismissal of her original complaint is granted, and her motion for leave to amend the complaint is granted.

*Charles P. Kocoras*
_____
Charles P. Kocoras
United States District Judge

Dated:       March 28, 2013